Good morning to all, and those of you who are not from Puerto Rico, welcome to Puerto Rico. Before we start calling the cases, I, along with my colleagues, would like to acknowledge Judge Celia's life. As you all know, last week she passed away at the young age of 90, and she was productive until the last minute. We miss her a lot. Judge Celia was a great friend of Puerto Rico. She truly enjoyed coming here. In the old days, some judges would have to sometimes sit four days a week. He would never say no. He loved the island. He loved the culture. He loved the food. So he's here with us in spirit. Simultaneously, we're just sitting today in Boston. My colleagues over there will be doing the same thing with all of his life. And Judge Celia left a great legacy in jurisprudence, federal jurisprudence, but also, those of you who happen to read Puerto Rico, jurisprudence, know that in diversity cases or other cases where Puerto Rico law has to be applied, he never shied away from doing what was right and trying to figure out what Puerto Rico law would say. And whether it has to be certified in the Supreme Court of Puerto Rico or decided by the court, he left a great legacy in a lot of jurisprudence, jurisdiction, federal cases, you name it. So before we start, I just ask my two colleagues, Judge Lopez and Judge Rickleman, to say a few words, and then we'll begin. Thank you, Judge. Judge Celia was a dear friend and an indispensable colleague. I have a vivid memory the first time that I ever sat on this court in 1998. Judge Celia was presiding, and I remember how graciously he introduced me to the court, to the folks who were there that day. And that began a 26-year collaboration. Judge Celia was, as Judge Lopez indicated, just a remarkable man, a great intellect, had an extraordinary memory, never forgot the name of the case he had written or read. And I found him forever instructive both in the way he did his work and the way he interacted with me as an individual. It was a privilege to have that close collaboration over all of those years. And like all of my colleagues, I will miss him very much. Judge Rickleman? I was only able to work with Judge Celia for a year and a half, but in that year and a half, he proved to be one of the warmest and kindest judges on our court. He would call me every few weeks just to check in and see how I was doing, if I had any questions. He offered his support, his mentorship, and as my colleagues have just said, he was unbelievably dedicated to the court. He issued an opinion, a publication in a case that I heard with him and Judge Barron, I think two days before he died. And I was still sending memos back and forth with him, I think about two days before he went into the hospital. So all he loved, not all he loved, but one of his greatest loves in life was doing this job, and he really passed on that devotion and dedication to everyone on the court. So we will miss him very much. Thank you all, and let's begin with the first case. Thank you, Judge. Today's cases will be called as previously announced, and the times will be as allotted to counsel. The first case today is number 221423, United States v. Derek Munoz Gonzalez. Will the attorney for appellant please come up and introduce yourself on the record to begin? Good morning, Your Honor. Jose R. Olmo Rodriguez on behalf of Derek Munoz Gonzalez, appellant. Are you going to reserve any time for rebuttal? May it please the court, I would like to reserve three minutes for rebuttal. Okay, your name? The only concession, I mean, Mr. Munoz waived his constitutional right to trial by jury for the concession by the government not to include two particular enhancements on the plea agreement. But that contract was plainly breached when the prosecutor, without any request from the court or without any need to counter an argument by the appellant, vigorously and specifically advocated for those two particular enhancements. And did not make any other argument. Counsel, are you sure that's a faithful account of the record? It's true that the prosecutor mentioned facts, stipulated facts that might support the enhancements. But I thought it wasn't until the judge began to explain his sentencing decisions that the enhancements were specifically identified as part of the rationale for what the judge was doing. I didn't see the prosecutor specifically identifying and advocating for those enhancements. I'm not sure that's a fair account of the record. The prosecutor in the trans people's sentencing hearing on pages 13 and 14, that's all the prosecutor's argument. And the prosecutor mentioned five times the word infant, which was one of the enhancements. And the prosecutor went over specifically two acts of sexual contact, which was the other enhancement. The prosecutor did not address anything else. Counsel, weren't those facts that the prosecutor talked about facts that your client had agreed to, they'd been stipulated to, right? I mean, there was no question that the child was an infant. And that was in the stipulated facts, wasn't it? No, well, yes, but it was not factored into the plea agreement. And Mr. Munoz's concern is not with the fact of the case. It's with the prosecution's failure to support the agreement not to advocate vigorously for those two enhancements. Okay, but counsel, the other thing is you have to go back before sentencing. There is a pre-sentence report. Those enhancements are there. Your client, I know I believe you're not the attorney below, your client did not object. The government did not object. And if there's no objection to the pre-sentence report, it's a non-issue. Then when the judge is sentencing, he's relying on the pre-sentence report, which I'm almost sure it also contains the information about the infant, why those enhancements apply. So are you suggesting in any way that the prosecutor should say, well, you know, or argue against the enhancements when your client is not arguing against the enhancements? No, I'm just suggesting that the prosecutor had no reason to go over specifically and vigorously advocate for those two enhancements that he agreed not to pursue. Okay, but in the transcript, the prosecutor is never saying, judge, you have to put these, add these two enhancements. The prosecutor is saying we're asking for a particular sentence of really 276 months, and these are the reasons, and it's because there was a minor involved, you know, and because of these factors, and that's already in the record. But the prosecutor specifically used the words emphasize, seldom, gravity, and seriousness in referring to these two particular enhancements. Basically, after Munoz argued to the judge that he deserved the agreed-upon sentence at the lower end, the prosecutor said, judge, forget about it, that's not important. And the important thing here is that it was an infant and there was sexual contact. That's all that's said, and those are the two factors that although are not being disputed. You're suggesting then that the prosecutor had no other choice but to argue 262 months the same way your client argued? Well. Because it's a difference of 14 months what the prosecutor is arguing. I'm suggesting. And it's within the plea agreement. I'm suggesting that the prosecutor's vigorous advocation for those two enhancements resulted in a sentence that is closer to a guideline with those two enhancements than a guideline without the enhancement which was agreed upon in the plea agreement. But counsel, how could the prosecutor have advocated for the higher sentence within the range in the plea without talking about the facts of the case? I mean, how would you have had the prosecutor explain why the government thought that the sentence should be higher than your client was asking for? Well, the prosecutor has all the right to do that. It's just that he cannot say to Mr. Munoz, hey, where are your constitutional rights? And I promise that we're not going to include these two factors. Only to go and at sentencing only rely on those two factors. Only. In pages 13 and 14. That's all that the prosecutor emphasizes and mentions the word infant five times and refers to sexual contact two times. Nothing else. The prosecutor did not say anything else. But weren't those the critical facts of the case, counsel? So again, how can the prosecutor talk about this case without talking about those facts? And our case law is very clear that the government is allowed to talk about the facts that support the government's request for a higher sentence, right? Yes. But as your Honor knows, in the case of Cortez, you were part of the panel, one thing is the facts and one thing is undermining the agreement of the parties by only focusing on those two enhancements that you agreed not to include in the plea agreement. They could have talked about the whole case and mentioned that, but to tell the judge this case is really important because of those two enhancements that we did not include. You know, that is not fair. Counsel, at least twice the prosecutor stated explicitly that they stand by the plea agreement. Now you would say that's just lip service. Is that correct? You said it wrong. Well, if you felt that certain facts that supported an enhancement were off limits, should have been off limits of sentencing, you could have bargained for that. You could have put that into the plea agreement. But there was nothing in the plea agreement that precluded the government from citing facts, which, as Judge Rickleman and Judge Heltia pointed out, might support the higher sentence that the prosecution was asking for. I mean, you must have known that if a range of sentence was at issue, that the prosecution would argue vigorously for that higher range. How could that surprise you that they would do exactly what they did? Because in that way, the Constitution is right only for that concession, and they only focus on those facts. What would have happened if the government, just like your client had asked, Judge, we agree 262 months here, that's the lowest under the plea agreement, but nonetheless we want to state that we want 262? And the prosecutor mentioned the same thing. Do you still say that would have been a breach? I'm sorry, Your Honor. If the government had stated exactly, the prosecutor, exactly what she did, which you're objecting to, but at the end, instead of saying we want 276 months, she would have said, we agree with the defense, 262 months does it. Would you have the same argument, still a breach? Yes, still a breach, because this honorable court's case law establishes that it is undermining, it doesn't matter that you fail its service, if the whole argument is undermining the agreement, then it is a breach. And in this case, it's an affirmative, an express breach, because it focused on the only two enhancements. As in the case of U.S. versus Canada, Your Honor, in 1992, there was no rule adjustment in the guideline calculation, and the prosecution emphasized the rule adjustment, and it resulted in that higher sentence, and it was reversed. That is a similar case. Thank you, counsel. You have three minutes for rebuttal, and let's hear then from the government. Good morning. May it please the court, Greg Conner for the government. In United States versus Teeter, this court explained the benefit to defendants, to the government, and to the court of waiver appeal provisions in plea agreements. The defendant gets the particular benefits within an agreement, and this court said, in many cases, there wouldn't be a deal at all absent a waiver provision. The government and the court then get to see the highest sentence a defendant will view as acceptable and the benefits of efficiency and finality from avoiding baseless appeals. Well, in this case, Munoz got his benefits, but neither the government nor the district court got theirs. So to avoid an exception that swallows the rule, we're asking this court to reject the breach claim under the miscarriage of justice part of the Teeter analysis. Now, at the outset, to sort of wade through some of the discrepancy in the briefings and the motions, we understand Munoz essentially to say that the waiver did not bar this appeal. So in essence, he's saying this is more of a scope question. And as I mentioned, our position is that this should be analyzed under the miscarriage of justice prong of the Teeter analysis. The problem with Munoz's position is that it threatens the practice of waiver of appeal provisions. In the real world, to effectuate Teeter, what happens from the prosecution's standpoint is that we will get a file, we will see the judgment, and frequently these agreements have waiver provisions, so we will simply ask whether the appeal is barred from the number of the judgment. So in this case, it was waived if it was 327 months or less, and he received 327 months. So something that he has not answered, and I think he should have to be able to answer for this court, is how Teeter, how a Rule 270C motion, and how waiver provisions could survive if this court accepts his argument that all you have to do is raise a breach claim and get around the waiver. Let me ask you, let's assume he's able to get around the waiver. As I mentioned earlier, as the other counsel argued, below there were no objections to pre-sentence report. So these enhancements are in the pre-sentence report. Nobody objects. I just reviewed the sentencing transcript after the district judge's sentences. There's no other objections. And if we were to review this, I guess it would be plain error. Would you agree with that? Okay, it would certainly be plain error, and I will address the merits of the breach claim because waiver is going to be an issue times 1,000 in this case. But I also want to refer you to what Judge Selya said when he's discussing waivers, that with court-appointed counsel freely available and nothing to lose, unfettered by a waiver agreement, a defendant is quite likely to appeal on a wing and a prayer. And so when I get into all of the reasons that the breach claim is, in our view, frivolous, we think this court should keep in mind that this is exactly what Teeter was warning against and does threaten the practice, which, once again, in terms of waiver and omissions from Munoz's briefing, he doesn't even mention Teeter. So presumably, even if he wanted to get around a waiver provision, you would do that through a Teeter analysis. Counsel, let me understand what you're arguing. Are you suggesting there... The government would consider it, in a sense, a loss if we... which we do sometimes. We say, yes, there are these waiver arguments, the waiver of appeal provision in the agreement. So plain error might apply to the breach argument, never raised below. Plain error is not even briefed here on appeal, so there's waiver versus waiver, perhaps on top of waiver on top of waiver. But if we thought there was value in elaborating on these arguments about what constitutes a breach of the plea agreement, because there is evolving law on that issue. I mean, if we thought there was value in clarifying that law, you would still see that as a loss because we had chosen not to enforce any of the waiver issues here? You would think that was a mistake on our part? I think there's a case that provides an example and I think might be in line with what you're thinking in terms of analysis. Basically, we think whether there is a frivolous or meritorious breach claim and something this court wants to write on, you will be able to do it in a miscarriage of justice analysis under Teeter. So basically what we're saying is we cannot conceive of any reason, and certainly Munoz has not identified any reason why this court can't conduct its breach analysis under the miscarriage of justice prong of Teeter. So there's no reason not to do it that way, and there's very much a reason not to incentivize a frivolous breach claim by saying, okay, if you raise breach, which we know our defense bar likes to do, if you raise breach, no Teeter, no waiver. I don't see how those cases and practices live on if you accept that position. In terms of precedent, and something that I think will address your concern about wanting to address evolving breach case law, the Conco Pizarro case did essentially what I'm suggesting. It held both that the waiver provision barred the appeal, but out of an abundance of caution, said even if we entertain the breach claim, it did not amount to a breach under a plein air analysis. So again, I don't see any reason why a breach would not constitute a miscarriage of justice. We're trying to continue the livelihood of the Teeter and Rule 27-0C motion practice. But in terms of the work burden for your office, every time there's an appeal like this, out of an abundance of caution, even if you think that the breach claim should not be addressed on the merits under any particular framework, you're going to have to still brief it, aren't you? Because you can't assume what the court is going to do. So every time a case comes up in this posture, you're going to have to deal fully with all the issues, aren't you? I don't think that's exactly correct. And actually our concern on a broader scale is that the opposite is true, which is that if you sanction this practice and accept Munoz's argument, we're not going to be able to file Rule 27-0C motions merely because there's a breach, and then you're going to get breach claims in every case. So I think we would still have to defend what took place below in a Rule 27-0C Teeter-themed motion, and some of those are lengthier than others, in the same way that some of this court's judgments are lengthier than others when it addresses Teeter. But if you accept the premise that a breach is likely going to be a miscarriage of justice, I don't see any reason why this court's practice of applying Teeter to waiver provisions of Rule 27 motions would not be able to continue to exist and address the concerns you have about breach claims. And, counsel, along these same lines, the fact that no claim of breach was made below, that would foster your argument under Rule 27, right? Certainly. And I will, in that light, turn to the merits of the breach claim. Frankly, this should have been an Anders brief. There is no leg to stand on, not the least of which because I don't think he's thought through the consequence of what would happen in this appeal if he wins. I don't know what possible benefit he could get. He's asking, if you accept his brief in literal terms, he's asking to get out of the agreement. And, I mean, aside from the fact that he would be crucified at a trial, he's not going to get a better agreement, and it was wise for the trial defense counsel to get this case pleaded. He would not stand a better chance. Let me clarify this. If he were to plea again, it would be a straight plea because maybe the government would say, okay, you don't want the agreement, no more agreement. Go to trial and plea. It's a straight plea. The government can then invoke this to enhance it. The government's free to also ask, consider this, consider that. That wasn't considered because, again, we don't know, but there may be things that are not on the record that were not considered that could have been considered or your office could have brought up, correct? Right, so there's nothing that would limit the government. I believe there's about 84 months of daylight between our recommendation and the guideline, which is also the statutory maximum. And if you look at the specific performance of the prosecutor in this case, it followed the agreement to a T. It said, okay, he just gave you a mitigation argument based on his history and personal circumstances. You also should consider under 3553A the circumstances of the case, advocated for the higher recommendation based on the facts of the case, and then specifically said, given those aggravating circumstances, we think the guideline range in the plea agreement represents an appropriate sentence, and we stand by our recommendation. He will not do any better than that. So counsel, in your view, the government below is just in context responding to the mitigating arguments that defense counsel had just made. That's correct, and as the panel mentioned earlier, dozens of this court's cases say that when there's two recommendations, both parties are allowed to support their recommendations. Do you—I mean, there was no briefing of the plain error standard, so we could just decide it on waiver, even a plain error review, correct? Yes. And does the government have a view on that, whether we should reach the merits or not? Our view is that there are many ways that the government can prevail in this case, including several forms of waiver, and we just have the concern that on a broader scale we're able to move for summary dismissal when a waiver applies. Counsel, isn't there a—I think it's still an unresolved issue in our circuit whether a claim of breach by the prosecution of a plea agreement can undo the kind of waiver appeal here? I mean, if we were just to—in light of the argument that's made, if we were just to say, well, the sentence imposed was within the terms of the agreement, and so he's bound by the waiver, wouldn't we be implicitly deciding that perhaps difficult and unresolved issue? Isn't that a problem for us if we just say we're going to enforce the waiver? I respectfully don't think so, because you would be saying that the waiver factors— or is covered by the scopes of Part 1 of TETR, but you would not necessarily be sanctioning that actual legitimate claims of breach would constitute a miscarriage of justice. So you think—okay, so— You just want us to use the TETR analysis. That's really just what you're arguing. Yes, and that any concerns about legitimate breach claims would be handled by a miscarriage of justice. And so we would factor the breach analysis into the TETR framework. That's for sure. Into Step 3, the TETR framework. Thank you. Thank you. Mr. Olmo, you have three minutes for rebuttal. Please identify yourself. Re-identify yourself. Jose R. Olmo Rodriguez. I just wanted to say that if this court includes in the waiver of a judgment and a sentence the waiver of a contractual right, then there will be no way for defendants to enforce the contract if there is a breach. Nothing further, Your Honor. Thank you. Thank you, counsel. That concludes arguments in this case.